IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SANTIAGO GARCIA GONZALES, as § | |
| Representative of the Estate of ERNESTO § | |
| GARCIA GONZALEZ, Deceased, et al. § | |
| § | 1: 20-cv-0605-LY |
| v. § | |
| § | |
| DARRELL SHANE SMITTY, et al. § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Ascension Seton d/b/a Ascension Seton Hays' Motion to Dismiss Plaintiffs' First Amended Complaint and Brief in Support (Dkt. No. 15); Plaintiffs' Response (Dkt. No. 20); Ascension Seton's Reply (Dkt. No. 21); and Plaintiffs' Sur-Reply (Dkt. No. 28). The District Court referred the above motion to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(c) of Appendix C of the Local Court Rules.

**I. BACKGROUND**

This is a wrongful death case. The following facts are taken from Plaintiffs' First Amended Complaint. Dkt. No. 10. On August 1, 2018, Defendant Darrell Smitty, in an attempt to avoid stopping behind a CapMetro bus, sped through the intersection of westbound Ben White Boulevard and 1st Street in Austin, Texas, jumped the curb, and struck and killed Ernesto Garcia Gonzales. Gonzales was walking on the sidewalk on his way to the bus. Plaintiffs allege Smitty was under the influence of drugs and alcohol, driving on a suspended license, and behind the wheel of an unregistered truck at the time of the occurrence. Smitty and his vehicle were identified based on

video recordings made by CapMetro and other witnesses at the scene. Smitty was arrested the following day by the Austin Police Department and was found to have both opiates and alcohol in his bloodstream at that time. Smitty already had a criminal record, including numerous previous arrests for DWI. Smitty is currently serving a 20 year prison sentence for intoxication manslaughter and failing to stop to render aid in the death of Gonzales. Smitty had been treated for pneumonia by Defendant Seton from July 25, 2018, to August 1, 2018. While at Seton, he was administered various narcotics. Smitty left Seton against medical advice at approximately 5:05 a.m. on the morning of August 1, 2018. At the time of his discharge, Smitty was escorted to his truck by Seton employees, agents, and/or representatives.

Plaintiffs are Gonzales' surviving family members. They are residents of Guatemala, and sue on behalf of his estate as well as their own behalf. At the time of his death, Gonzales was working in the United States to financially support his family in Guatemala. Plaintiffs assert claims Seton was negligent in that it:

- Failed to use ordinary care in the administration of narcotic medications to Smitty while he was a patient at the facility;

- Failed to have adequate policy and procedure statements regarding the discharge of a patient against medical advice;

- Failed to ensure that Smitty was seen and evaluated by all appropriate hospital personnel, including a hospitalist, before discharge;

- Failed to give Smitty any and/or adequate options for transportation from the facility to a safe destination;

- Failed to give Smitty adequate warnings about his impaired status and inability to drive a motor vehicle due to that impaired status at the time of discharge; and

—

- Failed to give Smitty adequate warnings about the effect of alcohol consumption as a potentiating factor in further impairing his status and ability to drive a motor vehicle at the time of discharge.

Dkt. No. 20 at 7. Seton moves to dismiss Plaintiffs' negligence claims, arguing it owed no duty to Gonzales or Plaintiffs, who were not patients.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of a plaintiff's claims before filing its answer when the pleadings, on their face, fail "to state a claim upon which relief can be granted." A pleading states a claim for relief when, inter alia, it contains "a short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a Rule 12(b)(6) motion, a court may rely on the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). A court must accept as true all factual allegations, although the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

**A.    The Parties' Arguments**

Seton moves to dismiss Plaintiffs' negligence claims, arguing they are solely founded on alleged improper medical care provided to Darrell Smitty. A health care liability claim,[1] or medical malpractice claim, is "a cause of action against a health care provider or physician for treatment, lack

---

[1]Plaintiffs concede this is a "healthcare liability claim." Dkt. No. 20 at 8.

3

of treatment, or other claimed departure from accepted standards of medical care, or health care . . . which proximately results in injury to or death of a claimant." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). Seton argues that Plaintiffs have no relation to Smitty and would be considered third parties for purposes of the allegations at issue. Seton maintains that under Texas law, a medical professional's duty only applies to a patient, and does not accrue to third-party non-patients, such as Plaintiffs. *See Praesel v. Johnson*, 967 S.W.2d 391, 398 (Tex. 1998). Because the existence of a duty is an element of a medical negligence claim, Seton argues the claim must be dismissed.

Under Texas law, the elements of a medical negligence claim are: (1) a duty by the physician or hospital to act according to an applicable standard of care; (2) a breach of that standard of care; (3) an injury, and (4) a causal connection between the breach of care and the injury. *See Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003) (citing cases). The parties agree that the existence of a legal duty is a question of law for the court to decide from the particular facts surrounding the occurrence in question. *Military Highway Water Supply Corp. v. Morin*, 156 S.W.3d 569, 572 (Tex.2005); *see also Parham v. Ryder Sys., Inc.*, 593 Fed. App'x 258, 260 (5th Cir. 2014). Absent a legal duty, there is no liability. *See Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex.1999).

Seton argues that Texas law limits a health care providers' duty arising out of the provision of medical care to the providers' patients, and does not extend to third parties. *See Praesel,* 967 S.W.2d 391; *St. John v. Pope*, 901 S.W.2d 420, 424 (Tex. 1995); *Van Horn v. Chambers*, 970 S.W.2d 542, 545 (Tex. 1998); *Thapar*, 994 S.W.2d 635. Since neither Gonzales nor his surviving family members were Seton's patients, it argues it owed no duty to them. Plaintiffs respond that despite the general rule enunciated by Seton, Texas law recognizes that a health care provider's duty may run to non-patient third-parties under some circumstances. Plaintiffs rely almost entitely on

*Gooden v. Tips*, 651 S.W.2d 364 (Tex. App. Tyler 1983, no writ), in support of their position. In *Gooden,* the defendant prescribed Quaaludes to Edith Goodpasture but did not warn her not to drive while under the influence of the drug. When Goodpasture injured another person while she was driving, that person sued the prescribing doctor. The doctor moved for summary judgment, contending he owed no duty to a non-patient. The Court rejected that argument stating "under proper facts, a physician can owe a duty to use reasonable care to protect the traveling public where the physician's negligence in diagnosis or treatment of his patient contributes to plaintiff's injuries." 651 S.W.2d 369-70. Plaintiffs also cite to a litany of cases which rely on *Gooden*, but all of them are from other states and jurisdictions. Plaintiffs argue that the reasoning of *Gooden* applies here, and the Court should find as a matter of law that Seton had a duty to Plaintiffs. Alternatively, should the Court find no duty, Plaintiffs move to amend their complaint.

Seton replies that *Gooden*, Plaintiffs' lone authority, is from an intermediate court of appeals, is 38 years old, is not controlling authority, and, in the view of one Fifth Circuit panel, likely has been implicitly overruled. Seton argues that since *Gooden* was decided, the Texas Supreme Court has held multiple times that health care providers do not owe a legal duty to third parties. *See Bird v. W.C.W.*, 868 S.W.2d 767 (Tex. 1994); *Edinburg Hospital Authority v. Trevino*, 941 S.W.2d 76 (Tex. 1997); *Praesel*, 967 S.W.2d 391 (identified by Seton as implicitly overruling *Gooden*); and *Van Horn*, 970 S.W.2d 542. Moreover, Seton argues, the Fifth Circuit rejected *Gooden* in *Martinez v. Walgreen Co.*, 935 F.3d 396 (5th Cir. 2019). Dkt. No. 20 at 13. Lastly, Seton contends that Plaintiffs should not be allowed to amend their Complaint because there are no set of facts that would lead to Seton owing a duty to Plaintiffs, and thus any amendment would be futile.

In the sur-reply, Plaintiffs contend that all of the Texas Supreme Court opinions cited by Seton explicitly discuss *Gooden* and do not overrule it, and none of those cases address a situation where a health care provider created a dangerous condition by administering medications known to impair a patient. Plaintiffs argue that *Gooden* is still a valid precedent, and it has not been explicitly or "implicitly" overruled by any Texas Supreme Court case, despite that court having had several opportunities to do so.

**B.     Analysis**

"When reviewing issues of state law, federal courts look to the law of that state's highest court." *City of Alexandria v. Brown*, 740 F.3d 339, 351 (5th Cir. 2014); *accord Price v. City of San Antonio, Tex.*, 431 F.3d 890, 892 (5th Cir. 2005). Absent a final decision by the Texas Supreme Court that "'precisely' resolves the legal issue," federal courts "must make an *Erie* guess and determine as best [they] can what the Supreme Court of Texas would decide." *Martinez*, 935 F.3d at 398 (citation omitted). When compelled to make an *Erie* guess, federal courts "defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) (citations and internal quotation marks omitted); *accord Price*, 431 F.3d at 893 n.5. The federal courts not only look to the intermediate state appellate decisions, but also to "the general rule on the issue, decisions from other jurisdictions, and general policy concerns." *Martinez*, 935 F.3d at 398 (citation omitted).

The existence of a duty is a threshold issue in a negligence case. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 246 (Tex. 2008) (setting out elements of medical negligence case); *Praesel*, 967 S.W.2d at 394 (discussing threshold issue of duty in medical

negligence case). "A duty is a legally enforceable obligation to conform to a particular standard of conduct." *Helbing v. Hunt*, 402 S.W.3d 699, 702 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (internal quotation marks omitted). As discussed above, *Gooden* involved a physician who prescribed Quaaludes to a patient with a history of drug abuse and failed to warn the patient not to drive. 651 S.W.2d at 365. The court of appeals in *Gooden* determined that the harm "was in the general field of danger which should reasonably have been foreseen by the doctor when he administered the drug" and thus, "the doctor was under a duty to take whatever steps were reasonable under the circumstances to reduce the likelihood of injury to other motorists." *Id.* at 370 ("we point out that we do not hold that a duty arose on the part of Dr. Tips to control the conduct of his patient," but "Dr. Tips may have had a duty to warn his patient not to drive").

In *Praesel*, a 1998 Texas Supreme Court case, the court addressed whether a physician who had failed to warn an epileptic patient that he should not drive had a duty to the victims of an accident the patient caused when he experienced a seizure while driving. 967 S.W.2d at 393. There the court recognized that "this Court has generally limited the scope of the duty owed by physicians in providing medical care to their patients." *Id.* at 396. In determining that no duty to third parties existed, the Court took into consideration the following factors: none of the physicians had the right or the ability to control the epileptic driver's conduct; that similar to physicians, persons with epilepsy know that they are subject to seizures; the risk that a seizure may occur while driving and the potential consequences should be obvious to those who suffer from epilepsy; and the low likelihood that an epileptic will actually heed a physician's warning not to drive versus the substantial liability placed on physicians by creating a duty to warn. Considering all of this, the court found that

> the benefit of warning an epileptic not to drive is incremental but . . . the consequences of imposing a duty are great. The responsibility for safe operation of a vehicle should remain primarily with the driver who is capable of ascertaining whether it is lawful to continue to drive once a disorder such as epilepsy has been diagnosed and seizures have occurred. Accordingly, we decline to impose on physicians a duty to third parties to warn an epileptic patient not to drive.

*Praesel*, 967 S.W.2d at 398. In a concurrence, Justice Enoch stated:

> My greater concern, though, is how the Court anguishes over whether the doctors had a duty to warn. The Court makes it clear that the Praesels do not claim that the doctors should have warned them; rather, they claim the doctors should have warned the patient. In short, the Praesels are bringing a third-party claim for breach of the doctors' duty to the patient. We have rejected these types of claims time and time again. In fact, the Court today cites the seminal cases that hold that a health care professional's duty is to the patient, not to a third party. 967 S.W.2d 398 (citing *Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 79 (Tex.1997), and *Bird v. W.C.W.*, 868 S.W.2d 767, 770 (Tex.1994)).
>
> *Edinburg* and *Bird* should dispose of the issue. But the Court engages in an extended discussion about whether these doctors have a duty to warn. So I must point out that the duty to warn, if there is one, is to warn the third party directly, not the patient. Small wonder then that courts wrestle over whether such a duty exists when the third parties are not known. *See Limon v. Gonzaba*, 940 S.W.2d 236, 240 (Tex.App.—San Antonio 1997, writ denied) ("If the victim is not identifiable, then who is the physician to warn?"); *see also Tarasoff v. Regents of the University of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 335 (1976), explained in *Thompson v. County of Alameda*, 27 Cal.3d 741, 167 Cal. Rptr. 70, 614 P.2d 728, 734 (1980) (holding that, under Tarasoff, a duty runs only to "readily identifiable" third parties).
>
> Also, the Court cites *Gooden v. Tips*, 651 S.W.2d 364 (Tex. App.—Tyler 1983, no writ). *Gooden* stands for the proposition that a doctor may be liable to third parties injured by the conduct of a patient when the doctor failed to warn the patient about the effects of a drug that the doctor prescribed. *See id.* at 369-70. When stripped of its duty-to-warn language, *Gooden* simply holds that a physician owes a duty to a third party to not negligently treat a patient. In light of our holdings in *Edinburg* and *Bird*, *Gooden* cannot be good authority and we should make that clear to the courts of this state. As we have held more than once, a doctor's duty is to the patient, not a third party.

*Praesel*, 967 S.W.2d at 399 (Enoch, J., concurring). Thus, after *Praesel*, *Gooden*'s persuasive value is questionable.

8

Plaintiffs counter that "courts in Texas continue to cite *Gooden* as the law with regard to when the duty of health care providers to third parties arises." Dkt. No. 20 at 13. They point to two cases in support of this claim, the first being *Mason v. AMed-Health, Inc.*, 582 S.W.3d 773, 783 (Tex. App. – Houston [1st Dist] 2019, pet. denied). In that case the court found that a hospice-care company and its medical director owed a duty to homeowners to warn them of hazards posed by oxygen delivered to treat a guest receiving hospice care at their home. The case arose out of a house fire that occurred when the patient smoked a cigar while on the oxygen. In discussing the general rule that medical providers' duty of care is to their patients and not third parties, the First Court of Appeals stated that "[t]he supreme court did not . . . create a bright-line rule that medical care providers can never owe a duty of care to nonpatients. Instead, the court applied the 'the familiar factors' [and] weigh[ed] the social, economic, and political questions involved and appl[ied] them to the facts at hand." *Mason*, 582 S.W.3d at 782 (citations omitted). Thus, the *Mason* court held that, "while AMed correctly argues that no provider-patient relationship existed between the Masons and AMed, that is not the sole basis for imposing a legal duty." *Id.* at 783. Analyzing the issue, the court stated:

> Considering the social utility of AMed's and Dr. Ojo's conduct and the fact that the medical providers had superior knowledge of the risk posed by a known smoker on mind-altering medication being treated with home oxygen, we conclude that there is great benefit in warning a patient's caregivers or other people in the patient's home of the fire risk posed by smoking around oxygen and in treating the patient in such a way as to lessen the risk to other people residing with the patient. . . . The burden of giving adequate warnings to caregivers or others residing in the home with the patient is slight, and, in fact, in most cases would not place any greater burden on the medical care providers than do the duties they owe to their patient. Likewise, healthcare providers owe a duty to their patient to take reasonable measures to prevent the risk of fire, and, thus, it is not overly burdensome to hold the providers liable for foreseeable injuries to people or property in close proximity to the patient that were caused by the failure of that duty.

9

* * *

> The nature of the claims and the relationship among the Masons, Vance, and Vance's medical-care providers in the present case are distinguishable from those in *Praesel*, *Flynn*, and *Gooden*. The Masons were not third parties in the population at large, but instead, had opened their home to allow Vance to receive home hospice care from AMed and Dr. Ojo. There is evidence that both AMed and Dr. Ojo were aware, or should have been aware, of Vance's living situation because representatives from AMed visited Vance while he was in the Masons' home and had multiple conversations with James Mason. AMed and its personnel interacted directly with the Masons by delivering oxygen tanks and other related equipment to the Masons' home and by providing care to Vance at the Masons' home, including treating Vance with potentially mind-altering medications. This is unlike the third-party drivers in *Praesel*, *Flynn*, and *Gooden*, who had no pre-existing relationship with either the physicians or the patients prior to the car accidents in which they were injured.

*Id.* 783-85. *Mason* can thus be distinguished from the instant case, in that Plaintiffs here, including Mr. Gonzales, are "third parties in the population at large" and not individuals that Seton could have identified, nor had any relationship with.

The second case Plaintiffs point to as having recognized that *Gooden* is still good law is *Martinez*, 935 F.3d 396. There, a pharmacy gave a customer someone else's prescription, and the customer went on to injure and kill several individuals while driving under the influence of the prescription. The Fifth Circuit found that "we have little difficulty concluding that the Texas Supreme Court would not impose a tort duty between pharmacies and third parties of the type the plaintiffs here advocate." *Id.* at 402. With regard to *Gooden*, the Court stated:

> It is unlikely that *Gooden* reflects the Texas Supreme Court's view on a healthcare provider's duty to third parties to warn patients of the risk of prescribed medication. It was decided before the line of cases addressing healthcare providers' duties to third parties, and the Texas Supreme Court subsequently rejected a duty on the part of a doctor to warn an epileptic patient about the risk of driving. A concurring opinion in that case faulted the majority for failing to make clearer that *Gooden* is not good law in light of the cases limiting health care professionals' duty to their own patients. Regardless, to the extent that *Gooden* represents how the Texas Supreme Court would resolve the question of whether a health care professional has a duty to third

parties to warn a patient of the risks of prescribed medication, *Gooden*'s framework
does not apply here.

*Martinez*, 935 F.3d at 400-01 (citations omitted). Thus, the Fifth Circuit chose not to apply *Gooden*, and questioned whether it was good law. Far from helping the Plaintiffs' case, it is additional support for finding that *Gooden* is not likely to be adopted by the Texas Supreme Court.

Indeed, for many of the same reasons discussed in *Martinez*, *Gooden* is not controlling here either. First, *Gooden* is an opinion from an intermediate court and not the Texas Supreme Court. And, second, as stated in Justice Enoch's concurrence in *Praesel*, the Texas Supreme Court has decided three cases since *Gooden*, each enunciating the limitation of a physician's duty to only his or her patient, and not to third parties. It is unlikely that Texas' highest court would find Seton owed a duty to a third party in its treatment of Smitty.

The first of the three cases just mentioned is *Van Horn*, where the court addressed the issue of whether a psychiatrist had a duty to third parties who were killed or injured when their patient, who had been transferred from a critical care unit to a private room on an unsecured general floor, tried to run away. In trying to subdue the patient, hospital employees fell 24 feet through an unsecured air shaft, and two were killed and one was injured. The court found that the psychiatrist did not owe a duty of care to these third parties. Noting that "the gravaman of the plaintiff's complaints is that Van Horn knew or should have known that Long posed a danger to others and should have treated him accordingly," 970 S.W.2d at 545, the Court stated:

> [t]his is ultimately a case of injured parties other than the patient claiming that a doctor negligently misdiagnosed, and in turn, negligently treated, a patient's condition. Any duty of reasonable care on Dr. Van Horn's part to avoid such negligence originates solely through the relationship with, and flows only to, his patients.

*Id.* The Court also explicitly declined to extend Texas law and find that Dr. Van Horn negligently exercised control over his patient, noting that this type of control over third parties is limited to the employer-employee relationship. *Id.* at 546.

In *Edinburg Hospital Auth.*, which *Van Horn* relied on, the father of a stillborn fetus sued to recover mental anguish damages against the hospital for the hospital's negligent treatment of his wife. The Court found "the hospital owes no duty to Trevino to provide competent medical care to Mora or the fetus." 941 S.W.2d at 79. Finally, in an earlier Texas Supreme Court decision, the court found that a psychologist, who had misdiagnosed a child as being abused, did not owe a duty to that child's father who was accused of the abuse. The court based its determination of no duty on the fact that the father "had no physician-patient relationship with Bird or with the Wetcher Clinic." *Bird*, 868 S.W.2d at 796.

Though the Texas Supreme Court has rejected numerous requests that it recognize a duty on the part of a healthcare provider to third parties, the court has not foreclosed the possibility that there might be a fact scenario in which it would recognize that a healthcare provider owed a duty to a third party. Further, the court has not been faced with the particular fact situation presented by this case. This is confirmed in *Zezulka*, which was decided after *Praesel*, when the court noted that "[w]e are not faced here with a question of whether a doctor owes a duty to third parties to warn a patient of risks of treatment which may endanger third parties." 994 S.W.2d at 638 (citing *Gooden*, 651 S.W.2d at 365-66).

"When the Texas Supreme Court has neither established nor foreclosed the possibility of a tort duty in 'particular circumstances,' Texas courts ask whether such a duty 'should be' recognized. *Martinez,* 935 F.3d at 402 (citing *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex.

2017)).² In this *Erie* situation, that means the Court must predict whether the Texas Supreme Court would conclude that the duty Plaintiffs advocate for should be recognized. The Court's best *Erie* "guess" is that it would not. The decision to impose a legal duty requires consideration of "social, economic, and political questions and their application to the facts at hand." *Praesel*, 967 S.W.2d at 397 (citing *Graff*, 858 at 920; *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990), and *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983)). In determining whether the defendant was under a duty, Texas courts consider several interrelated factors, including the risk, foreseeability, and likelihood of injury, weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Id.* at 397-98; *Phillips*, 801 S.W.2d at 525. Texas courts have also considered whether one party has superior knowledge of the risk or a right to control the actor whose conduct precipitated the harm. *Praesel*, 967 S.W.2d at 397-98; *Graff*, 858 S.W.2d at 920.

Plaintiffs' argue Seton had duties that fall into two categories: (1) failure to control or warn Smitty, and (2) failure to properly treat Smitty. The Court first addresses the "failure to warn" claims—the theory that Seton had a duty to Plaintiffs to warn Smitty about his impaired status due to the medications he had been given, that his ability to safely drive a motor vehicle was impaired at the time of discharge; and that alcohol consumption would further impair his ability to drive a motor vehicle at the time of discharge. Dkt. No. 20 at 7. While social utility would flow from a hospital warning its patients about the effect drugs administered by the hospital would have on driving—the efficacy of such a warning, particularly in this case, is low. Like in *Praesel,* imposing

---

²In making that decision, Texas courts follow the analytical approach set by *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993), which is the framework reflected in many of the cases already discussed in the text.

on hospitals a legal duty to third parties to warn a patient could subject hospitals to substantial liability even though their warnings may only minimally lessen or eliminate the risk to those third parties in many cases. "Unfortunately, many patients do not heed the admonitions of their physicians even though the consequences may be life-threatening to the patient or others . . . the responsibility for safe operation of a vehicle should remain primarily with the driver. . . ." *Praesel*, 967 S.W.2d at 398. In this case Smitty left the hospital against medical advice, underlining the low likelihood that he would have heeded *any* warning, including a warning not to drive while under the influence of medications administered at the hospital.

Similarly, with regard to any duty Seton had to warn Smitty not to drink, the efficacy of warning an alcoholic not to drink alcohol because of medication administered to him is also low. Almost all lay people are aware that one should not mix prescription drugs and alcohol, and the dangers of drinking and driving are well known. They were especially well known to Smitty, as he had prior DUI arrests, and his driver's license was suspended. While Seton did not have special knowledge of this danger, Smitty was well aware he had a drinking problem. Moreover, Smitty was released from Seton at 5:00 a.m., and it was not foreseeable that after release from the hospital in Kyle, Texas, after several days of treatment for pneumonia, he would drink alcohol and drive around Austin, miles away, in an impaired state. Balancing the need for and effectiveness of a warning to a patient who is an alcoholic and who leaves a hospital against medical advice, against the liability to third parties the Court finds the benefit of the warning is small, while the consequences of imposing such a duty are great. Making hospitals liable to third parties for the actions of patients after release under facts like those posed here would place a grave burden on the medical community, who would have no way of guarding against the injury, other than refusing to allow

patients to leave the hospital, something a hospital has no legal means of doing. For these reasons, the Court believes that the Texas Supreme Court would not impose a tort duty on Seton to Plaintiffs to warn a patient in Smitty's circumstances.

The second set of duties at issue, and those that Plaintiffs appear to rely most heavily on, relate to Seton's alleged failure to control Smitty when he left the hospital—embodied in the Plaintiffs' complaint that Seton did not "give Smitty any and/or adequate options for transportation from the facility to a safe destination." Dkt. No. 11. Plaintiffs contend that Seton should have known that Smitty posed a danger to the public if he drove and should have prevented him from driving himself away from the hospital. In *Van Horn*, the Texas Supreme Court found that a failure to properly restrain a patient could be medically negligent, but the duty only ran to the patient, and not to third parties. *Van Horn*, 970 F.2d at 545. Additionally, the Court found that the negligent exercise of control over a patient was an inappropriate basis for extending a physician's duty of care to third parties. *Id.* at 546. Given this, the Court's best *Erie* guess is that the Texas Supreme Court would not find that Seton had a duty to Plaintiffs (and thus to the public at large) to control the circumstances under which Smitty left the hospital. Smitty discharged himself from the hospital against medical advice, and Seton had no relationship with Smitty or ability to control his actions after that discharge.

Lastly, Plaintiffs argue that in its treatment of Smitty, Seton failed to use ordinary care in the administration of narcotic medications while he was a patient at the facility; failed to have adequate policy and procedure statements regarding the discharge of a patient against medical advice; and failed to ensure that Smitty was seen and evaluated by all appropriate hospital personnel, including a hospitalist, before discharge. These claims all directly relate to Smitty's medical care, and are

15

clearly controlled by the Texas Supreme Court cases limiting a caregiver's duty to patients. *Van Horn,* 970 S.W.2d 542; *Trevino*, 941 S.W.2d 76 ; *Bird*, 868 S.W.2d at 767. The Texas Supreme Court would not find a duty to Plaintiffs in these instances.

**F.  Leave to Amend**

When a complaint fails to state a claim, a court should generally give the plaintiff an opportunity to amend under Rule 15(a) before dismissing the action with prejudice. "Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n. 6 (5th Cir. 2000) (citing *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 675-76 (2d Cir. 1991)). Consistent with this, Plaintiffs move for leave to amend their complaint should the Court find the complaint lacking. Leave to amend "is by no means automatic," however, *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994), and "it is within the district court's discretion to deny a motion to amend if it is futile," *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000). While the Fifth Circuit has not specifically defined "futility," it has, along with "sister circuits . . . interpreted it to mean that the amended complaint would fail to state a claim upon which relief could be granted." *Id.*

Seton argues that leave to amend should be denied, as there are no facts that the Plaintiffs could possibly allege in an amended complaint that could overcome the lack of a legal duty owed to third parties like the Plaintiffs.  The Court agrees.  The Court's finding as a matter of law that Seton does not have a duty to Plaintiffs extinguishes the possibility of a viable claim, and granting

Plaintiffs an opportunity to amend to cure the defects in their complaint would be futile. The Court recommends therefore that the Plaintiffs' alternative request for leave to amend be DENIED.

## IV.  RECOMMENDATION

The undersigned **RECOMMENDS** that the Court **GRANT** Defendant Ascension Seton d/b/a Ascension Seton Hays' Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. No. 15) and **DISMISS** Plaintiffs' claims **WITH PREJUDICE** for failure to state a claim, and **DENY** the Plaintiffs' alternative request for leave to amend their Complaint.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation. Objections must specifically identify those findings or recommendations to which objection is being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SIGNED this 4th of May, 2021.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE